IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-683

Filed: 5 January 2016

Currituck County, No. 11 CVS 49

ALLEN TOBY HEDGEPETH, as Trustee under the Allen Toby Hedgepeth Declaration of Trust, Dated May 30, 2001, Plaintiff,

v.

PARKER'S LANDING PROPERTY OWNERS ASSOCIATION, INC., Defendant.

Appeal by plaintiff from order entered 12 January 2015 by Judge Marvin K. Blount in Currituck County Superior Court. Heard in the Court of Appeals 17 December 2015.

> *Vandeventer Black LLP, by Norman W. Shearin and Ashley P. Holmes, for plaintiff-appellant.*
>
> *Thompson & Pureza, P.A., by C. Everett Thompson, II and David R. Pureza, for defendant-appellee.*

TYSON, Judge.

Allen Toby Hedgepeth ("Plaintiff") appeals from order granting summary judgment in favor of Parker's Landing Property Owners Association, Inc. ("Defendant"). We reverse and remand.

## I. Factual and Procedural Background

Parker's Landing is a subdivision located in Currituck County, North Carolina. This property is bordered by U.S. Highway 158 to the west and by a tract of raw land

("the Hedgepeth Tract") to the south. The last survey plat of Parker's Landing was recorded in 1989 and provides all streets in the subdivision are private and owned by the Property Owners Association ("the POA"). The POA also owns the common areas within the subdivision.

In 1993, Plaintiff purchased the Hedgepeth Tract at a foreclosure sale without conducting a title search. The prior owners of the Hedgepeth Tract had purchased the property in 1987 with the intent of developing the property into a residential subdivision. The prior owners allegedly allowed the property to be foreclosed upon, because it failed to include a reasonable means of ingress or egress. Plaintiff sought to develop the Hedgepeth Tract into a residential subdivision, but under the development ordinances, could not do so without a 50-foot right-of-way leading from his property to U.S. Highway 158 or any other street.

Plaintiff, a resident of Virginia, filed a complaint against the POA in the United States District Court for the Eastern District of North Carolina in 2007 ("the federal complaint" or "the federal action"), to seek a declaration that he had an easement directly across Parker's Landing Drive. Plaintiff alleged "Parker's Landing Drive now affords the only physical access from the [Hedgepeth] Tract to U.S. Highway 158."

Plaintiff asserted that "[p]rior to the recording of the Final Plat [of Parker's Landing], the predecessors in title to the developer of Parker's Landing recognized

the existence of two (2) easements burdening Parker's Landing for the benefit of the [Hedgepeth] Tract[.]" Plaintiff contended the easements were created when the Parker's Landing Tract and the Hedgepeth Tract were severed from common ownership, which created an easement-by-necessity for access for an otherwise landlocked tract across the Parker's Landing Tract to the public highway. Plaintiff averred the developer of Parker's Landing relocated the easements from several platted lots to a street in the subdivision, Parker's Landing Drive, with the mutual assent of Plaintiff's predecessor-in-title.

In his federal court complaint, Plaintiff admitted the POA owned "the Common Areas in Parker's Landing Subdivision[,]" including Parker's Landing Drive. Plaintiff also conceded the south line of the Hedgepeth Tract adjoined Parker's Landing Drive. Plaintiff claimed he had either an express easement, an implied easement, or an easement by estoppel across Parker's Landing Drive.

At a pre-trial conference held on 29 May 2009, the parties entered into a pre-trial order, in which the parties stipulated to the following relevant facts:

> 4. POA is the owner of the "Common Areas" in Parker's Landing Subdivision described in that certain deed dated December 9, 2005 . . . .
>
> 5. Among the Common Areas owned by POA is a street named Parker's Landing Drive shown on the amended plat of Parker's Landing Subdivision recorded in Plat Cabinet E, Slide 116 & 117, Currituck County Registry (the "Amended Plat"). . . .

. . . .

8. POA is the owner of Parker's Landing Drive as shown on the Plats.

Plaintiff moved for summary judgment, and the federal district court denied Plaintiff's motion by order entered on 5 June 2009. The federal district court concluded, in part:

> Regardless of the angle from which this case is viewed, or with which party a shifting-burdens inquiry begins, Hedgepeth, who ultimately must prove he is entitled to judgment as a matter of law, unequivocally has demonstrated that he cannot do so insofar as he seeks declaration of an easement for use of Parker's Landing Drive to subdivide and develop the Hedgepeth tract.
>
> However, the court finds that no genuine issue of material fact exists, the resolution of which could result in Parker's Landing Drive being subject to an easement benefitting the Hedgepeth Tract . . . . Therefore, Hedgepeth's Motion for Summary Judgment . . . is DENIED.
>
> However, the court concludes that the record demonstrates . . . that an implied easement exists such that he has reasonable access to his property over the 25-foot right-of-way (Doris Lane) as shown on the plat of the heirs of Capitolla Smith . . . . Therefore, it hereby is DECLARED that the Parker's Landing tract, as shown on the August 30, 1993, Amended Final Plat . . . is subject to a 10-foot easement and a 25-foot right-of-way (Doris Lane) as shown on the plat of the heirs of Capitolla Smith . . . , the scope of which may not exceed that necessary to the farming or cultivation of the Hedgepeth tract, consistent with the use to which those paths were put when the common title to the two tracts was severed in 1894.

On 2 February 2011, Plaintiff filed a complaint against the POA and alleged the portion of Parker's Landing Drive, as depicted on the Amended Plat as running along the south line of the Hedgepeth Tract, actually *overlaps* with the south boundary of the Hedgepeth Tract. Plaintiff contended "[t]he true and correct boundary line dividing the [Hedgepeth] Tract and the lands of the POA is the common boundary described in that certain deed from W.W. Jarvis et ux to Nancy Virginia Parker dated October 12, 1940, and recorded in Book 71, Page 449, Currituck County Registry."

Plaintiff requested the trial court "declare the rights of the parties under the Amended Plat, Declaration, and the deeds, to quiet title to the [Hedgepeth] Tract, determine the true boundary between the [Hedgepeth] Tract and the lands of the POA, and enjoin the POA from interfering with those said rights[.]"

The POA filed a motion for summary judgment, and the trial court granted summary judgment in favor of the POA on 12 January 2015. Plaintiff gave timely notice of appeal to this Court.

## II. Issue

Plaintiff argues the trial court erred by granting summary judgment in favor of defendant the POA on any proper grounds, and particularly under the doctrine of judicial estoppel.

## III. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013); *see Draughon v. Harnett Cnty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (citation and internal quotation marks omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004).

"In a motion for summary judgment, the evidence presented to the trial court must be . . . viewed in a light most favorable to the non-moving party." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 467, 597 S.E.2d 674, 692 (2004) (citations omitted).

> An issue is "genuine" if it can be proven by substantial evidence and a fact is "material" if it would constitute or irrevocably establish any material element of a claim or a defense.
>
> A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim. Generally this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law. If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so.

*Lowe v. Bradford,* 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations and internal quotation marks omitted). This Court reviews an order granting summary judgment *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

## IV. Analysis

Plaintiff argues the trial court erred by granting summary judgment in favor of the POA. Plaintiff contends the trial court improperly based its ruling for Defendant on the doctrine of judicial estoppel. We agree.

Judicial estoppel precludes a party to a legal proceeding from making "clearly inconsistent" factual assertions, by subsequently asserting a contrary factual position. *Whitacre P'ship v. Biosignia*, 358 N.C. 1, 22, 591 S.E.2d 870, 884 (2004). Judicial estoppel seeks to protect the integrity of judicial proceedings by "prevent[ing] a party from acting in a way that is inconsistent with its earlier position before the court." *Powell v. City of Newton*, 364 N.C. 562, 569, 703 S.E.2d 723, 728 (2010) (citation omitted); *see also Whitacre*, 358 N.C. at 26, 591 S.E.2d at 887 ("[J]udicial estoppel seeks to protect courts, not litigants, from individuals who would play 'fast and loose' with the judicial system." (citation omitted)).

Judicial estoppel is an "equitable doctrine, which may be invoked in a court's discretion, is inherently flexible and requires weighing of relevant factors." *Powell*, 364 N.C. at 568, 703 S.E.2d at 728; *see also Whitacre*, 358 N.C. at 28, 591 S.E.2d at 888 (noting judicial estoppel should not be subjected to "rote application of inflexible

prerequisites or an exhaustive formula" (internal quotation marks omitted)). "[T]he circumstances under which judicial estoppel may appropriately be invoked are . . . not reducible to any general formulation of principle." *Whitacre*, 358 N.C. at 28, 591 S.E.2d at 888 (citation and quotation marks omitted). Judicial estoppel is "limited to the context of inconsistent factual assertions" and "*should not be applied to prevent the assertion of inconsistent legal theories.*" *Id.* at 32, 591 S.E.2d at 890 (emphasis supplied).

Our Supreme Court set forth three factors, which serve as guideposts for a court's decision of whether to apply the doctrine.

> First, a party's subsequent position must be *clearly inconsistent* with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 29, 591 S.E.2d at 888-89 (emphasis supplied) (citations and internal quotation marks omitted).

Here, Plaintiff sought a declaration of the true ownership and location of the south boundary of his property, which shares a common boundary with the subdivision. This Court previously addressed the effect of the federal court action on

subsequent claims Hedgepeth brought against the POA and individual lot owners in the subdivision in *Hedgepeth v. Parker's Landing Ass'n, Inc., et al. (Hedgepeth I)*, __ N.C. App. __, 762 S.E.2d 865 (2014).

In *Hedgepeth I*, this Court held *res judicata* applied to Hedgepeth's claim to enforce his right of access over the 25-foot easement because "the extent of the federal court order was to declare that Hedgepeth had limited rights of access over the 25-foot easement and the 10-foot easement." *Id.* at __, 762 S.E.2d at 873.

This Court also held *res judicata* did *not* apply to Hedgepeth's boundary claims against the POA:

> As a preliminary matter, we hold that only those portions of Hedgepeth's complaint concerning the two easements found by the federal court could possibly be the subject of *res judicata* based upon the federal court order.
>
> Neither the 25-foot easement nor the 10-foot easement runs along a common boundary of the Parker's Landing Subdivision tract and the Hedgepeth tract. *Therefore, the easements adjudicated by the federal court cannot be determinative of Hedgepeth's boundary claims* in [the present action].

*Id.* at __, 762 S.E.2d at 873 (emphasis supplied).

This Court's prior holding is law of the case. Under the doctrine of law of the case, "once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question both in subsequent proceedings in a trial court and on subsequent appeal." *Weston v. Carolina Medicorp, Inc.*, 113 N.C. App. 415, 417, 438 S.E.2d 751, 753 (1994). We are bound by this Court's previous determination

that "the easements adjudicated by the federal court cannot be determinative of Hedgepeth's boundary claims[.]" *Hedgepeth I*, __ N.C. App. at __, 762 S.E.2d at 873.

At the hearing on Defendant's motion for summary judgment, Defendant's counsel argued judicial estoppel bars Plaintiff's present boundary dispute allegations, and asserted Plaintiff had previously stipulated to the location and relative ownerships of the subdivision and his property in the pre-trial order in the federal court action. It is unclear from the record and the order whether the trial court granted summary judgment in favor of Defendant under the doctrine of judicial estoppel.

Under the guidelines set forth in *Whitacre* and its progeny, we cannot conclude Plaintiff's current factual assertion — that the south line of his property overlaps with Defendant's Parker's Landing Drive property — is "*clearly* inconsistent" with his factual allegations that he had an easement and access rights across Parker's Landing Drive in the federal complaint. *Whitacre*, 358 N.C. at 29, 591 S.E.2d at 888-89 (emphasis supplied).

Both parties admitted during oral argument that the federal court action could have resulted in the same outcome *even if* Plaintiff had asserted his boundary overlappage claims in that action. This reinforces our conclusion of an absence of a "clearly inconsistent" factual position by Plaintiff — the first, and the only requisite, element to trigger the application of judicial estoppel. *Wiley v. UPS, Inc.*, 154 N.C.

App. 183, 188, 594 S.E.2d 809, 812 (2004) ("The first factor, and the only factor that is an essential element which must be present for judicial estoppel to apply, is that a party's subsequent position must be clearly inconsistent with its earlier position." (citations and internal quotation marks omitted)).

In the federal court action, the counsel for both parties signed a pre-trial order, in which they stipulated "[the] POA is the owner of Parker's Landing Drive as shown on the Plats." This Court cannot reasonably interpret this factual stipulation to bind the boundary lines of the Hedgepeth Tract.

> It has been the policy of [our appellate courts] to encourage stipulations and to restrict their effect to the extent manifested by the parties in their agreement. In determining the extent of the stipulation[,] we look to the circumstances under which it was signed and the intent of the parties as expressed by the agreement. Similarly, stipulations will receive a reasonable construction with a view to effecting the intent of the parties; but in seeking the intention of the parties, the language used will not be so construed as to give the effect of an admission of a fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished.

*Rickert v. Rickert*, 282 N.C. 373, 380, 193 S.E.2d 79, 83 (1972) (citations and internal quotation marks omitted).

The federal court litigation involved Plaintiff's easement and access rights over Parker's Landing Drive to the Hedgepeth Tract. The alleged admissions and stipulations related to an assertion of access easements across Parker's Landing

Drive. No stipulations were made concerning the underlying ownership or the location of a disputed boundary line.

The location of the true boundary lines of the respective properties was simply not at issue in the federal court action. The federal court's order did not address, nor rely on, any underlying ownership of property on the location of the boundary lines which are now in dispute. Judicial estoppel "seeks to protect *courts*, not litigants, from manipulation." *Whitacre*, 358 N.C. at 24, 591 S.E.2d at 885 (emphasis supplied) (citation omitted).

Adjudicating Plaintiff's boundary claims does not threaten "the integrity of the judicial process" by leading to "inconsistent court determinations or the perception that either the first or the second court was misled." *Id.* at 28, 29, 591 S.E.2d at 888, 889 (citation and internal quotation marks omitted). In light of the outcome of the federal court litigation, we also cannot conclude Plaintiff's assertion of a boundary overlap "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 29, 591 S.E.2d at 889 (citation omitted).

## V. Conclusion

The essential element which must be present in order for a court to apply the doctrine of judicial estoppel — a "clearly inconsistent" statement by a party — is wholly absent from the facts at bar. The underlying purpose of judicial estoppel is to protect the integrity of the court system, which is not achieved by applying it to the

facts at bar. The trial court erred by granting summary judgment in favor of Defendant.

The trial court's order granting summary judgment in favor of Defendant is reversed. This cause is remanded for further proceedings.

REVERSED AND REMANDED.

Judges STROUD and DIETZ concur.